The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. The first argued case this morning is number 20-1383, Document Security Systems, Inc. v. Nichia Corporation. Thank you, Your Honor. Good morning and may it please the Court. There are a number of issues addressed in the briefs on this matter. I want to focus today on two of them in particular. The first is a claim construction issue that we contend is erroneous in the Board's final written decision. That's the construction of the term a metalized major surface, which appears in multiple different claim elements. The Board's construction failed to effectuate the actual words of the claim, which refer to a metalized surface, not to a small location on a surface. That construction is inconsistent with the basic language of the claim and with its usage in the patent specification. To illustrate this, I think the problem really arises because the Board essentially said that a metalized surface is a surface that has any small piece of metal on it. By way of analogy, if you were to place a nickel on your kitchen table, under the Board's construction, you would now have a kitchen table with a metalized top surface. We submit that that respectfully does not, that's not consistent with ordinary English language usage. It reads the surface portion out of the claim term. In making that error, the Board erroneously found that the patent equated any electrode with a metalized surface. But that's incorrect. The patent explained that all metalized surfaces could function as electrodes, but that does not make the converse true, that all electrodes can be metalized surfaces. It would be akin to saying that just because all elephants are mammals, all mammals must be elephants. We know that's not correct. Those kinds of reasoning don't work in both directions. The patent itself actually uses different language when it wants to refer to a small electrode or a small portion of a surface, as opposed to a metalized surface, which would be much more substantially metalized than just a tiny electrode. What is the procedure, Cheryl? Thank you, Judge Newman. I was just going to ask, what language in the specification are you relying on? Is it the reference to an anode and a cathode, or is it something else? So, a couple places, and thank you, Your Honor. When the patent owner wanted to refer to something covering a portion of a major surface, that's the language it used. That would be found, for example, at column 2, line 60 to 61. That's page 730 of the appendix. It also used language to refer to electrodes covering a small portion, as such, at column 5, line 7 to 10. That's page 732 of the appendix. Now, can I add something? It says here that the part you just cited in column 5, line 7 to 10, where it says covering at least parts, refers to an anode and cathode electrode. And your claim language also refers to an anode and cathode. It doesn't just say metalized bottom major surface. It says metalized bottom major surface comprising one of an anode and a cathode of the LED. Why isn't that then consistent, you know, the board's broadest reasonable interpretation of length of specification, why isn't that consistent with the specification of construction? Because, you know, in the specification, it's talking about an embodiment in which there's an anode and cathode covering just parts of the major surfaces. Well, the patent doesn't say that any time an anode or a cathode covers just part, that that's a metalized surface. It's true that an anode or a cathode electrode could be part of, could be made up of a metalized major surface. But that's not the only way you could have an anode or a cathode, and not every anode or cathode electrode constitutes a metalized major surface. If you look a little further down in column five, when it talks about metalization, it doesn't talk about a small pad, it talks about a coating of the surface. This is at lines 49 to 51, for example, of column five. What about lines 20 to 23, where it says the metalization on the bottom major surface of semiconductor diode 250 typically constitutes the cathode electrode? And that's the reference in the paragraph above. That's correct. And as I mentioned, this is a genus species problem. That's a reference that the metalized surface can serve as the electrode, just as an elephant is an example of a mammal. But that doesn't mean that the converse is true, that every small electrode constitutes a metalized surface. And so I think the board read these as equating the two, but it doesn't. It notes that a metalized surface can, of course, serve as an electrode, but it doesn't mean that an electrode is necessarily a metalized surface, in the same way that the nickel on your kitchen table isn't a metalized tabletop, it's a nickel on your table. So your view is, just to make sure I understand, that a metalized major surface means the whole thing is metalized. It's a fully metalized surface. I think our proposed construction was a substantial portion thereof. There can, of course, be, for example, insulating portions. It's possible to have a surface where you might have even two electrodes present on the same surface, with some insulating barriers between them, for example. Or you might etch away a portion of the metalized surface later. But it's not a tiny spot, as opposed to a substantial portion of the surface. That's correct. And what part of your specification would allow a person of ordinary skill in the art to understand how much is enough to be metalized? Well, I think, Your Honor, it speaks to the coding aspect, and the language itself teaches that it's a metalized surface. That doesn't necessarily imply that it has to be every square micron, but it does suggest that it's a substantial portion. What language is that specifically you're relying on in the claim to make sure to say that it has to be enough, but doesn't have to be all? I would say it's the language of the term itself, a metalized major surface, and also the comprising language. Counselor, it seems to me that you're arguing some sort of limit to the metalized surface. But where in the specification do you find any of those type of limitations? As I mentioned, Your Honor, I think, for example, when we read in the specification when it speaks to metalization of a surface, it talks about a coding or a metalization layer. This is, again, at column 5 around lines 49 to 51 on page 732 of the appendix. So the patent, separately, when it wants to talk about a bonding pad, it does that and uses the term bonding pad, for example, at line 16 of column 5. And from our perspective, the use of those different terms connotes different things. And the board equated them in a way that we think is inconsistent with specification and the language itself. But do they connote some sort of limitation on what constitutes a major surface? Yes, Your Honor. There is some language in the patent. That was a separate claim construction issue. There is definitely some language in the patent that talks about major surfaces and explains, for example, that a rectangular solid… I meant to say the metalized major surface. Maybe I misunderstood your question. Is there something that connotes what that is beyond what I pointed to? That connotes when a major surface, when you have a metalized major surface, you seem to be arguing that there's some sort of line that was crossed here. And I want to know what that line is. So I think the line is the distinction between a bonding pad and a surface that would be substantially covered in a metal layer. The patent talks about those as two different things. Okay. Unless the court has other questions, I did want to move to the other issue that I wanted to address, which is the board's failure to rely on substantial evidence in support of its finding that there was a proper motivation to combine essentially a primary reference with a group of secondary references. The claims here, to simplify them a little bit, they address an LED device or a semiconductor device that's made up of two primary components. There's what I'll call the package component, and the board relied on the Nakajima reference for that. And then there's the LED chip, the semiconductor component. The board relied on three subsidiary references to supply those. The petitioner conceded that the combination in the claims of a particular kind of package and a particular kind of semiconductor wasn't found in any single reference in the art. They argued, and the board accepted, that it was proper to substitute any of these three subsidiary references into the claims. We submit that there was not substantial evidence to support that finding because the petitioner failed to present anything but a conclusory expert assertion that essentially was little more than it's desirable to combine LED semiconductors with LED packages as opposed to there would be a motivation to combine these particular LED devices with these particular packages. Did you provide any contrary expert testimony? I apologize for interrupting, Your Honor. There was no contrary expert testimony provided below. The expert, however, for the petitioner merely offered these conclusions that weren't directed to the references themselves in a meaningful way. One way you can see that that plays out is that the references, for example, teach that in the primary reference, Nakajima, the height of the opening in which the semiconductor device can be placed is approximately one-half a millimeter in height. The various figures can all be found pretty easily on page 14 of the blue brief on the same page, which provides some help. But there's an opening of about half a millimeter according to the Nakajima reference in that space. The LEDs of the three subsidiary references are substantially larger than that size. And the petitioner offered no explanation of why a person of skill in the art would just ignore that and combine them anyway. For example, the KISH LED, the reference teaches that it's actually several millimeters tall. But that was never considered or addressed by a petitioner or its expert. We argue that that constitutes a failure of substantial evidence, particularly when I think motivation to combine is perhaps the most important component of an obviousness analysis. Did you make this argument in your brief? We did, Your Honor. I don't think we provided the specific example regarding the height, but the argument that there was no substantial evidence of the motivation to combine or the substitutability of these references. I don't recall seeing the height argument. The height specifically was not. The point is there's no discussion of any of these issues by the petitioner's expert, and that can't constitute substantial evidence. Can I ask also, just to clarify, the weak reference, that one does teach metallization on the full surface. Isn't that right? It teaches, I think there's a, so depending on which claim you're looking at, claim two, for example, the 486 patent requires metallization on both the top and the bottom. The weak reference that you mentioned arguably teaches some metallization on the top. It does not teach a metallized bottom major surface. In fact, what the board referred to is arguably five surfaces that it somehow combined together, none of which we would submit actually meet even the board's construction of a major surface. All right. Are there any more questions at the moment for Mr. Liddell? Let's hear from the other side. Mr. Macon. Good morning, Your Honors. It's Thomas Macon on behalf of Appelli Nitsche. Barring the panel's direction to me to focus on a specific area, I would like to address the two major points that my colleague on the other side referenced. First, with respect to metallization, you know, especially under the broadest reasonable interpretation standard that governed the IPR below, there's no reason for reading a specific amount of metallization into the claims, as was discussed as my colleague spoke. The 486 patent, both in the claims and in Column 5, is crystal clear in its teaching that the anode and cathode could be the metallization and that the anode and cathode do not have to cover an entire surface. And, in fact, in Kish, Weeks, and Edmund, the metallization pointed to in the IPR is the cathode or anode. You know, secondly, I think I heard Appellant try to argue that one should infer aspects of the LED from aspects of the substrate. But, again, there's nothing in the spec to support such an argument. It's perfectly permissible to claim a substrate, for example, and to describe a substrate in a particular way while claiming and describing an LED in a different way. And, last, while counsel didn't address this, you know, DSS essentially, Appellant essentially, wants Major to do double duty, act, you know, with respect to the word surface, act as an adjective, and then with respect to metallization, also function kind of like an adverb to describe how much metallization there need be. With respect to the point about substantial evidence, I did agree with the Court that the last argument was, to me, entirely new and, you know, should be waived or forfeited. But to address the issue overall, here the Board's final written decision relies on both unrebutted expert testimony and documentary evidence for its findings that a person of ordinary skill would have been motivated to combine the references and, further, that a person of ordinary skill would have understood the combination. Your friend on the other side says that your expert simply testified as to conclusions. Can you respond to that? Sure. And looking at the final written decision is enormously helpful because the Board directly pointed to the relevant paragraphs, for example, of Dr. Scheele's declaration and the prior art itself, supporting the rationale to combine that the Board found and the fact that the combination involved a mere simple substitution. The Board cited Dr. Scheele's declaration in paragraphs 80 and 82 to 83, for example, in Appendix 1046 to 1048 for the premise that Nakajima itself, I think what my colleague called the primary reference, discloses the claim limitation except that it doesn't expressly disclose the details in the major surfaces and, further, for the premise that a person of ordinary skill would have understood that the top and bottom major surface of Nakajima's LED would have been metallized for the purpose of being an anode and cathode, respectively. And the Board further cited the LED references themselves as supporting Dr. Scheele's opinion in this regard. And further supporting the rationale to combine, the Board cited Dr. Scheele's declaration of paragraphs 83 and 84, that's Appendix 1046 to 1048, and specifically the WEEKS reference at Column 2, Line 57, to Column 3, Line 2, that's at Appendix 1158, for the premise that, among other things, the metallized LEDs of WEEKS, KISH, and Edmunds provide optical improvements and heat thinking that would recommend their use with a package of Nakajima. And relying on the same material, the Board found that the combination would be desirous for use in a display or illumination device and that this use would be a routine design choice. And in the briefs, Appellant has admitted that at least the optical improvement and heat thinking motivations are listed in WEEKS. The Board specifically noted that these findings are supported by not only the aforementioned, but also, quote, the entire trial record before us. And they specifically rebuked Appellant's position here, noting that Dr. Scheele provides support, at least from the teachings of the Nakajima, WEEKS, KISH, and Edmund references themselves, and the Board then accorded this unrebutted evidence substantial weight. It's also important that the Board found persuasive Petitioner's contention that the improved LED teachings of the LED references are complementary to Nakajima's teachings regarding an improved LED package, as explained in the original petition at Appendix 284 and Dr. Scheele's declaration at Appendix 1048, Paragraph 84 particularly. Was Dr. Scheele's testimony rebutted? It was not. Not only was it not rebutted by expert testimony, it was not rebutted by a documentary evidence, and it was supported by documentary evidence that he cited. The last comment I was going to make related to his testimony of Paragraph 84, that Nakajima's package, the primary references package, is directed to improving the luminous efficacy of standard LEDs, I think counsel on the other side suggested about some shape of the packaging, and that's why. And that's yet another reason to combine the references. I mean, I would think a better motivation to combine could not be explained that there's a package with a standard LED in it, Nakajima, and standard LEDs, Weeks, Kish, and Edmond, and they both tell the public that their designs improve light output. So, unless the panel has further specific questions or clarifications for me, I do not need any additional time. Any more questions for Mr. Naken? No, thank you. All right, and thank you. Mr. Lizell, you have your rebuttal time. Thank you, Your Honor. I think there are two issues I want to address. First is the suggestion that a lot was made of these couple of paragraphs in the Sheely Declaration, which I think Petitioner concedes is really the only evidence that was presented to support this motivation to combine. And I think the concern here is when you're talking about obviousness, in many respects, the motivation to combine is the most important part of the analysis. It's often the case that the disparate elements of an invention are found in the prior art, but it's the combination of those in a new way that's the inventive aspect of almost every patent. And it's important not to simply gloss over that motivation to combine. Dr. Sheely does nothing but essentially say, well, these are LEDs that you'd want to get light out of, and these are packages. That's enough to combine them. But as noted, that's not enough of an analysis of this package and these LEDs. It's a generic statement that doesn't address a motivation to combine of these actual references. And so that could be a sufficient analysis, given the art references in this case that don't appear to require any in-depth analysis. But we do have testimony from an expert. You don't provide any rebuttal testimony, even as to those several paragraphs that you referred to, and this issue boils down to substantial evidence. That's correct that it does, Your Honor. But where an expert presents only conclusory opinions, that's not substantial evidence to satisfy the burden of proof, rebutted or not. They have the burden to establish this. They have to present evidence that would do so, and conclusory expert assertions are not cognizable evidence and therefore cannot carry that burden and cannot constitute substantial evidence. You're saying that what was absent was some sort of explicit suggestion to combine somewhere in the references? That's correct, Your Honor. Or an explanation of why you would combine these specific references, these particular LEDs with this particular package, rather than a sort of mere gloss that you would combine some LEDs with some packages, and that was enough. Okay. Anything else you need to tell us? I think that's all, Your Honor, unless the panel has other questions. I believe I probably have exceeded my time, so I don't want to abuse that. Any more questions for Mr. Liddell? No, thank you. Okay. Hearing none, the case is taken under submission with thanks to both counsel. Thank you, Your Honor.